GENTLEMEN:

The duties which you have now promised to perform are among those of the greatest importance and dignity in a free State. In executing this trust which by our law is exclusively your province, the comprehensive oath you have taken points out the conduct you ought to pursue, and the motives by which you should be influenced.

And while you are ready to hear every real grievance and present those who are guilty, without fear, favor or affection, you will on the other hand investigate every complaint that comes before you in the most impartial manner, will diligently inquire into the circumstances of the charge, and the credibility of the witnesses who support it, before you will put the person accused to his trial by a petit jury.

To assist you in the discharge of those duties, I shall now, gentlemen, enumerate most of those crimes of which you have cognizance, which are treason etc.

The Attorney General, gentlemen, will forward to you all such bills of indictment as shall be put in prosecution, and will also furnish you with such advice and assistance as you may require in the progress of your business.

## STATE v. SAMUEL TINDAL.

Court of Quarter Sessions. Sussex. November 18, 1802.

*Rodney's Notes.*

Attorney General, *Vandyke* [for plaintiff]. *Wilson, Cooper* [for defendant].

Thomas Pointer, sworn. I knew a mulatto woman called Pat Costen. Peter Dawson, and Samuel Tindal, a Bob, and myself were at Cullen's, fixed upon a night to take her away. Bob and me went and took her and carried her away to the end of Tin-

dal's Lane and there he, Tindal, took her. Don't know where they carried her. Bob had her for a sort of a wife and could persuade her anywhere. Near three years ago in River Hundred, it was summer time. The prisoner is the same person, would not tell me what he did with Pat. She seemed to be alarmed and hollered.

Joseph Copes, sworn. About the middle of June, 1799, I went to Indian River, inquired where Dawson and Tindal were, went in search of them and Pat, to Snow Hill in Maryland, found her there in sheriff's possession. I have since seen her here. She was discharged by sheriff before I came away. Samuel Tindal after his return met me on the road. Requested me not to appear against him for taking her away. I believe Pat has never been in possession of any person as a slave. She was the reputed daughter of Paulina Costen.

Cross-examined. Lived fifteen or twenty years ago at Housten's Mill. Tindal lives fifteen miles from Maryland line, in Dagsby Hundred, I believe.

Caldwel Windsor. Has known Pat since 1790, has been acting as a free woman ever since, and hired about from place to place where she and her mother lived. Have known her reputed father and mother ever since 1790. They have both acted as free persons. She, Pat, is a middling bright yellow. Her mother never had a master that I knew.

*Mr. Cooper,* for defendant, stated to jury their defense, etc.

Noah Short. Have no acquaintance with Pointer. At harvest heard Pointer say to Tindal, I never sold you mulatto in my life, it was to Dawson, and never saw him but once before he took the girl to the end of the lane. Cross-examined.

Jessee Tindal. Went to Pointer, told him Dawson and Tindal said they should not take the Negro unless he brought her that evening. He swore they had bought her, and asked if they had the money. He said he'd carry her out and let them have her, if they had the money, not otherwise. He brought her to Tindal's that night. He said Samuel got up, was a Negro in the kitchen shut up. Sam got his horse and went with Pointer to Dawson to see if they had the money. A few days after, Dawson and P. came to Samuel's house, and they paid Pointer about £25 for the Negro. They drew a paper. Pointer signed and I signed as a witness to warrant and defend her from all other claims.

Cross-examined. Do not know who took her away, did not see her. She had not lived in our neighborhood.

September docket, 1800. Indictment for kidnapping, and pardon from the Governor.

*Vandyke,* Attorney General. We have established the fact that Tindal with Peter Dawson did feloniously kidnap and carry to Maryland the negro girl Pat.

*Cooper* for defendant. Read the Act of Assembly, [2 Del. Laws] 1093. No evidence whatever of Tindal's being in possession of Pat except at the end of his [——].[1] Leach 412. The uncorroborated evidence of an accomplice not sufficient to convict.

*Wilson* for defendant. The act should be done with a felonious intent. There ought to be either direct proof or presumptive that he knew her to be a slave. That aiders or assisters under this Act not liable except they [——].[2] That it does appear Samuel Tindal suffered for this offense. 4 Bl.Comm. 336. No man should be twice tried for the same offense. 3 Dall. 372. Sentence pronounced in any place by a court having jurisdiction will have effect anywhere. We have produced no evidence or record of conviction in Maryland.

Attorney General. First point they make is that the evidence is not sufficient to establish the felonious intent. Second point they make that Samuel Tindal has been punished in Maryland, therefore cannot be punished again in this state.

PER CURIAM. As to second point made by counsel, the jury can take no notice of a conviction in Maryland unless the record be produced. If the evidence satisfies you, etc.

Verdict, not guilty. Motion for costs. Certificate granted.

---

## WILLIAM and TRAFENIA TATMAN'S LESSEE v. ISAAC POLK, tenant, ELIJAH ADAMS and WIFE, co-defendants.

Court of Common Pleas. Sussex. November 22, 1802.

*Rodney's Notes.*

---

[1] Manuscript torn.
[2] Blank in manuscript.